BOWLES, Administrator, Office of Price Administration, v. JONES & LAUGHLIN STEEL CORPORATION.

Civil Action No. 806.

District Court, E. D. Louisiana,
New Orleans Division.

April 7, 1944.

Herbert W. Christenberry, U. S. Atty., of New Orleans, La., Amos J. Coffman, of Dallas, Tex., James O'Niell, of New Orleans, La., and John F. Whitelaw, of Brownsville, Tex., for plaintiff.

Alfred C. Kammer, of New Orleans, La., and John C. Bane, Jr., of Pittsburgh, Pa., for defendant.

BORAH, District Judge.

This is a suit for treble damages and for an injunction, brought by the Price Admin-

istrator against Jones & Laughlin Steel Corporation under Section 205(a) and (e) of the Emergency Price Control Act of 1942.[1] The action is based on alleged overcharges in the sale of iron and steel products in violation of the iron and steel regulation, Revised Price Schedule No. 49, adopted pursuant to the Act, and is presently before the court on plaintiff's application for a preliminary injunction.

Section 205(a) of the Emergency Price Control Act of 1942 provides:

"Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

Section 4(a) of the Act, 50 U.S.C.A. Appendix § 904(a), makes it unlawful for a person to sell or deliver any commodity in violation of any regulation, order or price schedule of the Administrator. A regulation issued under Section 2 of the Act, 50 U.S.C.A. Appendix § 902, and effective on January 11, 1943,[2] fixed in table form a seller's maximum base price on sales of certain product items out of warehouse stock in less than carload quantities and provided for quantity differentials per hundred pounds that must be allowed on iron or steel shipped from warehouses in the divers cities set forth. On iron or steel products shipped from a New Orleans warehouse, the regulation to the extent here pertinent required a reduction in price of 20 cents per 100 pounds on shipments ranging from 10,000 to 39,999 pounds.

The complaint charges that the defendant has violated the provisions of Revised Price Schedule No. 49 in the following three general particulars: (1) In splitting shipments and causing purchasers to split their orders so that no one order or shipment would equal as much as 40,000 pounds of material, in order that defendant could charge for this material a price higher than the maximum price permitted by the schedule for shipments of 40,000 pounds or more; (2) in combining in one shipment earmarked and specially priced material with other material not so earmarked and priced, so that the complete shipment totaled more than 40,000 pounds, and pricing the material not so earmarked and specially priced at a price higher than the price permitted by the schedule for shipments of 40,000 pounds or more; (3) in failing to apply the proper quantity differential deduction as provided by said schedule, in that the schedule provides that on shipments or orders of 10,000 pounds or over and up to 39,999 pounds, the quantity differential or deduction shall be 20¢ per hundred pounds, whereas the defendant at its New Orleans warehouse has improperly and in violation of the schedule allowed a deduction of only 15¢ per hundred pounds.

The complaint does not charge that the defendant acted with bad or evil purpose nor it is charged that the defendant will in the future continue to violate the schedule unless restrained by an order of this court. This last mentioned allegation appears only in plaintiff's motion for a preliminary injunction.

The application for an interlocutory injunction was made upon the complaint and ex parte affidavits. Exclusive of the verifying affidavit which was made on information and belief, the affidavits for the plaintiff only touch on some of the transactions that are set forth in the complaint. And these affidavits that do relate to alleged infractions of the type first and secondly described are open to criticism in that they either do not support the allegations of the complaint, do lack positiveness and definiteness or do give mere conclusions on some points instead of primary facts. In the light of defendant's full and explicit denial it can hardly be said that plaintiff's showing on this branch of the case has been impressive. For all that appears the charge with respect to split shipments is based on suspicions and the charge with respect to the second type of infraction is based on plaintiff's interpretation of the Regulation. This interpretation is not obvious, but raises questions of doubtful and unsettled character. With these general observations the court will now state the facts which

---

[1] Act of January 30, 1942, 56 Stat. 23, 33, 50 U.S.C.A. Appendix § 925(a, e).

[2] Sec. 1306.163 added by Amendment 10, 8 Fed.Reg. 319.

bear on the issues with respect to the third type of alleged violations.

Price Schedule No. 49 in its original form and as published on December 15, 1941, made no attempt to fix prices in dollars and cents. It simply froze warehouse prices at levels which obtained on April 16, 1941, by requiring "that on or before December 31, 1941 every seller of iron or steel products * * * shall file in duplicate, in affidavit form, with the Office of Price Administration, Washington, D. C., his prices circulated to his salesmen and customers in effect on April 16, 1941, or customarily quoted and charged on that date, including extra lists, deduction lists, charges and discounts."

On December 30, 1941, and in compliance with the regulation defendant filed its schedules of its April 16, 1941, prices. In these schedules there was included a schedule of quantity extras and deductions and the defendant reported that it had on April 16, 1941, allowed discounts of 15¢ per hundred weight upon orders ranging from 10,000 to 39,999 pounds and from that time until November 1, 1943, goods sold from the defendant's New Orleans warehouse were priced accordingly.

On June 13, 1942, the Director of the Industrial Materials Price Division of the Office of Price Administration sent a letter to defendant addressed to the New Orleans warehouse which was worded as follows:

"This office has your city and country price filings dated October 6, 1939, which appear to have been filed with us before the issuance of price schedule No. 49. There is some question as to whether or not these were your April 16, 1941, prices, which should have been filed with us according to the schedule. If these are your April 16, 1941, prices, kindly supplement your filing with a statement to that effect.

"If these are not a filing of prices which you charged on April 16, 1941, kindly forward complete filing of your April 16, 1941 prices to this office within ten (10) days."

This letter was referred to the home offices of the corporation and in the press of business was referred to an inexperienced employee of defendant, and the following ambiguous response was mailed on June 25, 1942:

"* * *

"The prices referred to were in effect as of April 16, 1941.

"A copy of our letter of December 30, together with statement showing enclosures, is attached.

"We trust this will give you all the information desired."

On January 7, 1943, Amendment 10 to Schedule No. 49 was adopted. This schedule, which was to become effective on January 11, 1943, was intended to state substantially in dollars and cents the same April 16, 1941, scale of steel prices which had been called for by the original schedule. Amendment No. 10 provided in part that the quantity discount upon shipments of 10,000 to 39,999 pounds should be 20¢ per hundred pounds although a 15¢ discount had prevailed in New Orleans on April 16, 1941.

On January 29, 1943, the defendant protested by letter to the variance between the prices in Amendment No. 10 and those April 16, 1941, prices set out in the schedule filed by it December 30, 1941, particularly with respect to the aforementioned error in plaintiff's publication of defendant's quantity discounts. In the oral discussions that followed plaintiff took the position that the prices as published in Amendment No. 10 constituted a publication of the prices as filed by defendant for its New Orleans warehouse. This record does not reveal that plaintiff referred to any facts in support of his contention but knowing what facts were in his possession it is seemingly plain that plaintiff must have relied on the first paragraph of defendant's letter of June 25th without realizing that the statement there made was in irreconcilable conflict with the accompanying schedules adverted to in the second paragraph of said letter. If this was the situation, as it undoubtedly was, one could hardly expect an amicable adjustment of differences, for the representatives of defendant had played no part in formulating the letter of June 25th and did not then know or realize the extent to which it had contributed to the error in the schedule. In any event the defendant did not press the matter to a conclusion and it continued to allow the 15¢ discount because it rightly and honestly believed that the schedule was intended to publish it and because further amendments to the price schedule in which it was to participate were under consideration in the spring of 1943. In this connection it should be noted that there was nothing secretive about defendant's action

and since it was obliged to file semi-monthly reports with the Office of Price Administration its practice must have been well known to plaintiff, yet it does not appear that any complaint was made until several weeks prior to the institution of this suit.

The new schedule, Amendment 18, went into effect on November 1, 1943 and the quantity discount which figures in this case was by negotiation set at 20¢. Since that date the defendant has apparently allowed the quantity discount and charged the prices which are printed on the new schedule.

The complaint does not charge that the defendant acted with bad faith or evil intent and I think it appropriate to say that the element of wilfulness is entirely lacking in the evidence. The complaint does not charge nor does the evidence suggest that the defendant has committed any violation since October, 1943 and no evidence was presented showing that defendant intended to violate further the schedule.

In the light of the issues and of the facts presented I am persuaded that plaintiff has not made such a showing of the gravity of his complaint and of the necessity and need for restrained enforcement of the schedule as to warrant interlocutory relief. The denial of plaintiff's application for injunctive relief is, however, without prejudice to the right of the Administrator to renew his application if violations occur in the future. Upon the request of either party an early trial may be had upon the merits.